**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00045-RM-NYW

DAVID GRIEGO,

     Plaintiff,

v.

KOHL'S, INC.,

     Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

     This matter comes before this court for recommendation on Defendant's Motion to Dismiss Under Rule 12(b)(6) [Doc. 10, filed March 2, 2021]. This court considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated March 22, 2021 [Doc. 17], and the Memorandum dated March 22, 2021. [Doc. 19]. The court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, upon review of the Motion, the Parties' briefing, applicable case law, and the entire case file, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED** and that Plaintiff's claim be **DISMISSED without prejudice**, with leave to amend.

**BACKGROUND**

     This case arises out of the former employment relationship between Plaintiff David Griego ("Mr. Griego" or "Plaintiff") and Defendant Kohl's, Inc. ("Kohl's" or "Defendant"). *See generally* [Doc. 1]. Mr. Griego is a military veteran who retired from the United States Army in 2015. [*Id.*

at 3, ¶¶ 12, 16].[1]  Mr. Griego was injured in combat, suffering from a traumatic brain injury ("TBI"), and was later diagnosed with post-traumatic stress disorder ("PTSD").  [*Id.* at 3, ¶ 13]. The Army Physical Evaluation Board reviewed Mr. Griego's medical record and determined that Mr. Griego was 100% disabled and was unfit for further duty; the United States Department of Veterans Affairs subsequently "rated Mr. Griego as 100% disabled."  [*Id.* at 3, ¶¶ 14-15].

Mr. Griego uses a service dog named Radar to help manage his disabilities.  [*Id.* at 4, ¶ 17]. Specifically, Radar is trained to react to Mr. Griego experiencing anxiety or a panic event; in the case of either, Radar will "interrupt th[e] event by providing physical pressure on [Mr. Griego's] body to help restore normal respiration and heart rate."  [*Id.* at 4, ¶ 10].  Radar also assists Mr. Griego with balance troubles by providing him physical stability.  [*Id.* at 4, ¶ 11].  Radar accompanies Mr. Griego throughout the day, faces behind Mr. Griego and watches his back, and checks around corners and inside of rooms before Mr. Griego enters.  [*Id.* at 4, ¶ 9].  In addition, Radar is trained to only interact with Mr. Griego, and does not interact with any other person unless Mr. Griego directs him to do so.  [*Id.* at 5, ¶ 12].  Mr. Griego asserts that his continuous, long-term relationship with Radar "provides him with a calming and stabilizing presence that he requires to help him in [his] daily life."  [*Id.* at 4, ¶ 8].

On or about January 23, 2020, Mr. Griego applied for employment with Kohl's as a loss-prevention employee, at which time he disclosed his disabilities and requested the accommodation of being accompanied by Radar while working.  [*Id.* at 5, ¶¶ 13-14].  Defendant's hiring manager told Mr. Griego that he could not bring Radar to work initially while his request was pending review, but "assured [Mr. Griego] that it would not be a problem."  [*Id.* at 5, ¶¶ 15-16].  Mr. Griego

---

[1] The Complaint contains duplicative paragraphs 4-17.  *See* [Doc. 1 at 2-5].  For this reason, the court references both the page number and the paragraph number in citing to the Complaint.

"reluctantly" agreed to begin working for Kohl's without Radar and began work on February 4, 2020.  [*Id.* at 5, ¶¶ 17-18].  Because he began working without Radar, Mr. Griego experienced stress and negative impacts on his relationship with Radar and had difficulty arranging interim care for Radar, whom he had never left alone for a significant length of time.  [*Id.* at 7, ¶¶ 32-34].  During his second week of work, Kohl's asked Mr. Griego to provide support for his disability accommodation request; Mr. Griego gave such information to his manager, Jennifer Katz ("Ms. Katz").  [*Id.* at 7, ¶ 35].

On February 23, 2020, Mr. Griego brought Radar to work without Defendant's express approval.  [*Id.* at 8, ¶ 38].  Mr. Griego did so to "continue the interactive process with [Kohl's] regarding [Mr. Griego's] request for reasonable accommodation" and "so that Kohl's could independently evaluate and observe Radar's behavior in the workplace environment and his interaction with Mr. Griego" and others.  [*Id.* at 8, ¶ 39].  Defendant's loss-prevention supervisor, Mike Aragon ("Mr. Aragon"), observed that Radar had to be told multiple times to sit or stay, would lie down in the middle of the walkway, tried to walk around the loss-prevention office while a shoplifter was being interviewed, and that Mr. Griego "had to use chairs to block Radar in the corner during a shoplifter interview."  [*Id.* at 8, ¶ 40].  In addition, Mr. Aragon reported that store associates were concerned as to how Radar would react if a suspected shoplifter became verbally aggressive.  [*Id.* at 9, ¶ 40].  Kohl's did not inform Mr. Griego of Mr. Aragon's observations.  [*Id.* at 9, ¶ 44].

According to Mr. Griego, Mr. Griego did tell Radar to sit and stay "several times," but he did so because such commands are used every time Mr. Griego gets up, because Radar is trained to move as Mr. Griego does.  [*Id.* at 9, ¶ 45].  Mr. Griego asserts the remainder of Mr. Aragon's observations are false.  [*Id.* at 10, ¶ 45].  According to Mr. Griego, two other employees were

present in the loss-prevention office with Mr. Griego for multiple hours that day, and Radar obeyed Mr. Griego's command to "place" and did not move or distract the employees. [*Id.* at 9, ¶ 41]. One of the employees informed Mr. Griego that he had sent an email to Ms. Katz detailing how Radar was well-behaved. [*Id.* at 9, ¶ 42]. In addition, Mr. Aragon commented to Mr. Griego about how well-trained and well-behaved Radar was. [*Id.* at 10, ¶ 46]. After Kohl's informed Mr. Griego that he could not bring Radar to work until human resources had completed its review of Mr. Griego's accommodation request, Mr. Griego then returned to working without Radar's assistance. [*Id.* at 10, ¶¶ 48-49].

On February 25, 2020, Ms. Katz sent Mr. Griego an email containing a series of questions about Radar that had been relayed to her by human resources, which Mr. Griego answered. [*Id.* at 11-13, ¶ 51]. On March 3, 2020, Mr. Griego began communicating with Defendant's human resources advisor, Kimberly Sheskey ("Ms. Sheskey"). [*Id.* at 15, ¶ 52]. Mr. Griego sent Ms. Sheskey the documentation he had previously provided to Ms. Katz, as well as a medical report form completed by his health care provider, which included information about how Radar assists Mr. Griego. [*Id.* at 13, ¶¶ 53-54]. During his conversations with Ms. Sheskey, Mr. Griego proposed that Radar be kept in the corridor near the loss-prevention office, "where he would be far away from any other person in the office, but still able to see and assist him as necessary." [*Id.* at 14, ¶ 57]. Ms. Sheskey replied that Kohl's would require Radar to stay in the loss prevention office, but that Mr. Griego would need to move Radar outside of the office any time Mr. Griego was interviewing a suspected shoplifter. [*Id.* at 14, ¶¶ 59-60]. Mr. Griego objected to this requirement because it was "inconsistent with Radar's training, . . . would interfere with his relationship with Radar, and would prohibit Radar from providing assistance to him;" Ms. Sheskey

informed Mr. Griego that she would discuss Mr. Griego's objection with her leadership.  [*Id.* at 14-15, ¶¶ 61-63].

On March 18, 2020, Ms. Sheskey informed Mr. Griego that Kohl's would permit him to bring Radar into the workplace subject to a list of requirements that the company would require Mr. Griego to follow (the "Proposed Accommodation").  [*Id.* at 15, ¶ 65].  The Proposed Accommodation stated that Radar must remain in the loss-prevention office at all times, except when a customer was present, and it would be Mr. Griego's responsibility to provide a secure crate for Radar to be transported to and secured in prior to any customer entering the loss prevention office.  [*Id.* at 15-16, ¶ 65].  In addition, Radar could not accompany Mr. Griego on any loss prevention tasks that occurred on the sales floor.  [*Id.* at 16, ¶ 65].  Mr. Griego and Ms. Sheskey spoke by telephone on March 19, 2020, at which time Mr. Griego informed Ms. Sheskey that several of the guidelines were "unacceptable," particularly the ones which required Radar to remain in the loss prevention office and be crated.  [*Id.* at 16, ¶ 66].  Specifically, Mr. Griego explained to Ms. Sheskey that Radar had never been crated and that the restrictions in the Proposed Accommodation were inconsistent with his relationship with Radar and the assistance Radar provides him.  [*Id.* at 16, ¶ 67].  Mr. Sheskey informed Mr. Griego that Kohl's was concerned how Radar would react to an angry alleged shoplifter or any otherwise stressful situation; Mr. Griego told Ms. Sheskey that this concern was "unfounded and unreasonable," but Ms. Sheskey informed Mr. Griego that Kohl's would not consider modifying the Proposed Accommodation.  [*Id.* at 17, ¶¶ 68-69].

Mr. Griego then concluded that, because Kohl's would not grant him his requested accommodation "without the aforementioned unreasonable and unjustified restrictions," his employment was constructively discharged.  [*Id.* at 17, ¶¶ 70-71].  Mr. Griego informed his

supervisor and left work for the last time on March 19, 2020.  [*Id.* at 17, ¶ 72].  On March 30, 2020, Mr. Griego filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Kohl's had refused his request for a disability accommodation without identifying a hardship preventing such an accommodation, and thus had violated the Americans with Disabilities Act ("ADA").  [*Id.* at 18, ¶¶ 76-77].  The EEOC issued Mr. Griego a Notice of Right to Sue Letter on October 30, 2020.  [*Id.* at 20, ¶ 87].  Plaintiff initiated this lawsuit on January 8, 2021, asserting one claim of disability discrimination in violation of the ADA.  [*Id.* at 20].

On March 2, 2021, Kohl's filed Defendant's Motion to Dismiss Under Rule 12(b)(6) [Doc. 10], which was accompanied by Defendant's Memorandum Supporting its Motion to Dismiss Under Rule 12(b)(6) [Doc. 11] (collectively, the "Motion" or "Motion to Dismiss"), seeking dismissal of Plaintiff's Complaint on the basis that he has failed to state a claim upon which relief can be granted.  Mr. Griego filed a Response on March 23, 2021, [Doc. 20], to which Kohl's replied on April 2, 2021.  [Doc. 23].  Because the matter is ripe for Recommendation, the court considers the Parties' arguments below.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulistic formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather,

"a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Kohl's argues that Mr. Griego's disability-discrimination claim should be dismissed with prejudice pursuant to Rule 12(b)(6). *See* [Doc. 11]. Specifically, Kohl's argues that (1) Kohl's provided Mr. Griego with a reasonable accommodation for his disability, [*id.* at 11-12]; and (2) even if it did not provide Mr. Griego with a reasonable accommodation, such failure is attributable to Mr. Griego because he caused a breakdown of the Parties' interactive process. [*Id.* at 9-10]. Kohl's also seeks dismissal of Mr. Griego's "claim for constructive discharge" on the basis that Mr. Griego was not discharged, but voluntarily quit his employment. [*Id.* at 12-13]. In his Response, Mr. Griego asserts that Kohl's did, in fact, fail to provide him with a reasonable accommodation because the Proposed Accommodation would have denied Mr. Griego the assistance of Radar during certain portions of his employment. [Doc. 20 at 3]. In addition, Mr. Griego argues that Kohl's was responsible for cutting off the interactive process because its Proposed Accommodation was a "take-it-or-leave-it proposal" and because Kohl's would not consider any modifications to the Proposed Accommodation. [*Id.* at 7]. Finally, Plaintiff posits that the court need not consider Defendant's argument concerning constructive discharge because

"[t]hat is an issue regarding the scope and extent of Mr. Griego's alleged damages should he prevail," but is not required to prove that Kohl's is liable for disability discrimination. [*Id.* at 10].

On Reply, Kohl's continues to urge the court to find that its efforts were reasonable, and that Kohl's offered Mr. Griego what he requested as an accommodation in writing. [Doc. 23]. Defendant further argues Mr. Griego's failure to respond to its argument regarding constructive discharge merits its dismissal, or in alternative, Plaintiff fails to aver sufficient facts for such a claim. [*Id.* at 6-8]. The court addresses the Parties' arguments below.

## I.    Disability Discrimination and the Failure to Accommodate

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim of disability discrimination under Title II, Mr. Griego must allege that: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) he suffered discrimination on the basis of his disability. *Fryer v. Coil Tubing Servs., LLC*, 415 F. App'x 37, 43 (10th Cir. 2011) (unpublished). "Courts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016).

The Parties agree that Mr. Griego's sole claim is based on Defendant's alleged failure to accommodate his disability. *See* [Doc. 1 at 20, ¶¶ 93, 97 ("The ADA required Kohl's to reasonably accommodate Mr. Griego's disability. . . . Based on [Defendant's] refusal to grant Mr. Griego's request for [a] reasonable accommodation . . ., Mr. Griego had no choice but to resign [from] his employment.")]; *see also* [Doc. 20 at 1 ("Kohl's never provided Mr. Griego with a reasonable

accommodation of his disabilities" (emphasis omitted)]; [*id.* at 3-6 (setting forth reasonable-accommodation law and regulations); Doc. 11 at 8-9].   Discrimination under the ADA includes the failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."   42 U.S.C. § 12112(b)(5)(A).   "[F]ailure-to-accommodate claims concern an omission rather than an action; such claims allege that the employer discriminated against the employee by not satisfying an affirmative, ADA-created duty to provide reasonable accommodations" once the employer had notice of those required accommodations.   *Exby-Stolley v. Bd. of Cty. Comm'rs*, 979 F.3d 784, 796 (10th Cir. 2020).

To state a failure-to-accommodate claim, a claimant must allege that (1) he was disabled; (2) he was otherwise qualified; (3) he requested a plausibly reasonable accommodation; and (4) his employer refused to accommodate his disability.   *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020).   Kohl's does not dispute for purposes of the instant Motion that Mr. Griego is a qualified individual with a disability or that he requested a reasonable accommodation for his disability. [Doc. 11 at 9].   Instead, Kohl's focuses on the fourth element of the prima facie failure-to-accommodate claim: that it refused to accommodate Mr. Griego's disability.   Kohl's argues that Mr. Griego cannot state a failure-to-accommodate claim because, accepting the facts as pled by Plaintiff in his Complaint: (1) it engaged in the required "interactive process" with Plaintiff in an attempt to provide him a reasonable accommodation, and any breakdown of that interactive process was caused by Plaintiff and (2) Kohl's, in fact, offered Mr. Griego the Proposed Accommodation that was a reasonable accommodation under the ADA. [*Id.* at 10-13].

### A.    The Interactive Process

"The federal regulations implementing the ADA 'envision an interactive process that requires participation by both parties.'" *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (quoting *Beck*, 75 F.3d at 1135).  "The purpose of the interactive process is to 'identify the precise limitations resulting from the disability and [the] potential reasonable accommodations that could overcome those limitations.'" *McFarland v. City & Cty. of Denver*, No. 15-cv-01258-KMT, 2017 WL 3872639, at *6 (D. Colo. Sept. 5, 2017), *aff'd*, 744 F. App'x 583 (10th Cir. 2018) (unpublished) (quoting 29 C.F.R. § 1630.2(o)(3)).  "Typically, this interactive process begins with an employee providing notice to [his] employer of a disability and any resulting limitations." *Id.*  Once the employee has provided notice of a disability, the interactive process "requires the good faith participation of both the employer and employee." *Aubrey*, 975 F.3d at 1007 (emphasis omitted).  "The exact shape of this interactive dialogue will necessarily vary from situation to situation and no rules of universal application can be articulated." *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1173 (10th Cir. 1999).  However, a party who obstructs or delays the interactive process does not act in good faith, nor does a party who "fails to communicate, by way of initiation or response." *Id.* at 1172.  "If this process fails to lead to a reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown." *McFarland*, 2017 WL 3872639, at *6.

According to Kohl's, Mr. Griego caused the breakdown of the interactive process and thus has failed to state a claim for failure to accommodate.  [Doc. 11 at 10-11].  More specifically, Kohl's argues that it offered Mr. Griego two accommodations: the Proposed Accommodation and, in the alternative, a transfer to a different open position for which Mr. Griego was qualified.  [*Id.*

at 11]; *see also* [Doc. 11-3 at 4].[2]   Kohl's argues that, because Plaintiff "refused the two accommodations offered and quit without further discussion," the failure of the interactive process is attributable to Mr. Griego, and thus it cannot be held liable for failure to accommodate under the ADA.  [Doc. 11 at 11].  Mr. Griego responds that, because the Proposed Accommodation was a "take-it-or-leave it proposal to Mr. Griego," and because Kohl's "would not consider or accept any modifications," to the Proposed Accommodation, "Kohl's is therefore responsible for cutting off and failing to continue the interactive process with Mr. Griego."  [Doc. 20 at 7].

The court first notes that the question as to whether an employer or employee caused a breakdown in the interactive process is a "fact-intensive question better suited for summary judgment" or trial.  *Summers v. Chaffey Joint Union High Sch. Dist.*, No. 5:20-cv-02060-SB-KK, 2021 WL 922069, at *1 (C.D. Cal. Jan. 13, 2021);[3] *see also O'Reilly v. Bd. of Child Care of United Methodist Church, Inc.*, No. CV JKB-20-0570, 2020 WL 5913242, at *4 (D. Md. Oct. 6, 2020) ("[W]hether [the defendant] made a good-faith effort to engage in an interactive process involve[s] questions of fact. . . . Factual questions that preclude summary judgment are certainly not capable of resolution at the motion to dismiss stage."); *Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 540 (S.D.N.Y. 2014) (declining to resolve "these highly fact-sensitive issues on a motion

---

[2] Attached to Defendant's Motion is a letter from Ms. Sheskey to Mr. Griego titled "RE: Accommodation Request" dated March 18, 2020.  [Doc. 11-3 at 4].  The letter states that, "[i]f [Mr. Griego] did not wish to accept" the Proposed Accommodation, they could "explore other accommodation options, such as any open non-LP position for which [Mr. Griego was] qualified." [Doc. 11-3 at 4].  This court may consider extraneous documents that are referenced in Plaintiff's Complaint and which are central to his claims without converting the motion to one for summary judgment.  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  Although the Complaint contains no allegations that Kohl's offered to transfer Mr. Griego to another position, *see generally* [Doc. 1], Mr. Griego does reference this letter in his Complaint.  *See* [*id.* at 15, ¶ 65].  For this reasons, the court considers this letter in this Recommendation.

[3] Indeed, each of the cases relied upon by Kohl's involves a ruling at the summary-judgment stage. *See* [Doc. 11 at 10-11].

to dismiss").  Indeed, most of the case law directed at this issue arises in the context of summary-judgment stage, rather than the motion-to-dismiss stage.  The court thus declines to pass on the substantive merits of whether any party engaged in the interactive process in good faith and which party, if any, caused a breakdown of that process; instead, the court focuses only on the sufficiency of Mr. Griego's Complaint and whether Mr. Griego sufficiently alleges that the breakdown in the interactive process was caused by Kohl's.

The Complaint alleges that Mr. Griego disclosed his disability and requested a reasonable accommodation upon beginning employment with Kohl's, [Doc. 1 at 5, ¶ 14], thus triggering Defendant's duty to engage in the interactive process.  Mr. Griego then began discussing his accommodation request with Ms. Sheskey, who informed Mr. Griego that Kohl's would require Radar to stay in the loss-prevention office the entire day unless crated during a customer interview; Mr. Griego objected to this requirement on the basis that it would prohibit Radar from assisting him.  [*Id.* at 14, ¶¶ 58-62].  After informing Mr. Griego that she would bring his concerns to leadership, Ms. Sheskey then sent Mr. Griego a letter containing the terms of the Proposed Accommodation.  [*Id.* at 15, ¶ 65].  The letter stated that, if Mr. Griego "[did] not wish to accept this accommodation, [they could] also explore other accommodation options, such as any open non-LP position for which [Mr. Griego was] qualified." [Doc. 11-3 at 4].  When Mr. Griego told Ms. Sheskey that the restrictions in the Proposed Accommodation were "unacceptable," Ms. Sheskey told Mr. Griego that "Kohl's would not consider modifying these requirements."  [Doc. 1 at 16-17, ¶¶ 66, 69].  Mr. Griego concluded he was constructively discharged and declined to return to work.  [*Id.* at 17, ¶¶ 70-72].

Construing these facts and drawing all reasonable inferences in Plaintiff's favor, as it must, *Casanova*, 595 F.3d at 1124, the court concludes that Plaintiff has sufficiently alleged facts that

avoid dismissal at this stage.  Specifically, Plaintiff alleges that, despite Mr. Griego informing Ms. Sheskey on two separate occasions that the restrictions suggested by Kohl's would not work, *see* [Doc. 1 at 14, 16, ¶¶ 61-62, 66-67], Kohl's refused to modify the Proposed Accommodation or otherwise discuss with Mr. Griego how the Proposed Accommodation could be revised, instead informing Mr. Griego that Kohl's would not consider modifying the Proposed Accommodation. [*Id.* at 14-17, ¶¶ 65, 69].  Based on these averments, Plaintiff has sufficiently alleged that, by failing to engage in an interactive dialogue with Mr. Griego about the Proposed Accommodation, Kohl's was the party to effectively cut off the interactive process.  *See Branson v. West*, No. 97 C 3538, 1999 WL 311717, at *12 (N.D. Ill. May 11, 1999) ("[A]lthough 'reasonable accommodation' does not require employers to provide the exact accommodation requested by employees, this general statement of the law does not end the relevant analysis.  An employer is obligated to participate in good faith in [the] interactive process to determine the employee's limitations resulting from the disability as well as the nature of any reasonable accommodations to overcome these limitations."); *see also Wilson v. Saint Francis Ministries, Inc.*, No. 18-2027-CM, 2019 WL 6715577, at *8 (D. Kan. Dec. 10, 2019) (holding that an employer's mere suggestion of an accommodation is not enough to demonstrate good-faith participation in the interactive process where the employee identifies disability-related concerns about the suggested accommodation and where the employer fails to engage with the employee about those concerns);[4] *cf. United States v. Dental Dreams, LLC*,

---

[4] Although in a different procedural context than the instant matter, *Wilson* is instructive.  In *Wilson*, the disabled plaintiff and his employer agreed that the plaintiff would work a 32-hour work week to accommodate his college schedule (rather than his disability).  2019 WL 6715577 at *1.  After the employer asked the plaintiff to work six six-hour days for a 36-hour work week, the plaintiff refused, explaining that he could not commit to working Saturdays because he would be "without the backup he might need should his disability cause him difficulty."  *Id.* at *2.  Days later, the employer put the plaintiff on a performance improvement plan ("PIP") which provided, among other items, that the plaintiff would be required to work 40 hours per week.  *Id.*

307 F. Supp. 3d 1224, 1251 (D.N.M. 2018) (finding a genuine dispute of fact as to the cause of the breakdown of the interactive process where the plaintiff presented evidence that is employer "refused to discuss how a service dog could assist Plaintiff"); *Lafata v. Church of Christ Home for Aged*, 325 F. App'x 416, 423 (6th Cir. 2009) (unpublished) (in summary judgment context, finding dispute of fact as to whether the defendant engaged in good faith in the interactive process where the defendant told the plaintiff that a job was "what's being offered" and that the plaintiff could "take it or leave it").

In addition, contrary to Defendant's argument, the fact that Mr. Griego left his employment with Kohl's does not definitively demonstrate that he created the interactive-process breakdown. The "last act in the interactive process is not always the cause of a breakdown, . . . and courts must examine the process as a whole to determine whether the evidence requires a finding that one party's bad faith caused the breakdown." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 806 (7th Cir. 2005). The court must construe all reasonable inferences and resolve all factual ambiguities

---

The plaintiff then later filed a lawsuit accusing his employer of violating the ADA, based in part on the schedule change. *Id.* at *4. On summary judgment, the employer argued that it had offered the plaintiff a reasonable accommodation by offering the six-day, six-hour per day schedule, which the plaintiff refused. *Id.* at *8. The court disagreed, finding that there was evidence demonstrating that the defendant caused the breakdown of the interactive process. *Id.* More specifically, the court reasoned that, "had [the plaintiff] simply refused [the employer's] proposed work schedule without further word," the breakdown in the interactive process might have been attributable to the plaintiff. *Id.* However, because the plaintiff had "accompanied his refusal with expressed concern that the proposed schedule would force him to work more hours, and some of them alone and without the support of other staff he might need should his disability cause him difficulty . . . the interactive process required defendant to do more, in response, than simply default plaintiff to a 40-hour work week." *Id.* Indeed, "[t]he interactive process required defendant to consult further with plaintiff to ascertain 'the precise job-related limitations imposed by [his] disability and how those limitations could be overcome." *Id.* (quoting *Section 1630.9 Process of Determining the Appropriate Reasonable Accommodation*, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. § 1630.2, App.) (alterations in original)). Finding that a genuine dispute of fact existed as to which party caused the breakdown of the interactive process, the court denied the employer's motion for summary judgment. *Id.*

in Plaintiff's favor, *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260 (10th Cir. 2012), and as set forth above, the Complaint sufficiently alleges that Mr. Griego refused to return to work only after Kohl's terminated the interactive process. Thus, Mr. Griego's failure to return to work is not *per se* fatal to his ADA claim. *See Gilbert v. City of St. Charles*, No. 96 C 7101, 1999 WL 182151, at *10 (N.D. Ill. Mar. 24, 1999) (in summary judgment context, finding that "[a] reasonable jury could find that the City did not participate in [the interactive] process in good faith when it presented the [accommodation offer] as a take-it-or-leave it proposition, and [where the plaintiff] withdrew his request for this accommodation because he thought that further discussions with the City on this point would be pointless.").

Finally, insofar as Kohl's argues that it did not cause the breakdown in the interactive process because it suggested to Plaintiff that he could be transferred to a different position, [Doc. 11 at 10], the court respectfully disagrees that it can draw this conclusion based on the allegations set forth in the Complaint, thus warranting dismissal of Plaintiff's claim at the pleading stage. The Tenth Circuit has instructed that "[the ADA] *requires* the employer to use reasonable accommodation *to keep the employee in his or her existing job*, and *if that cannot be accomplished*, to use reasonable accommodation to offer reassignment to another vacant job." *Smith*, 180 F.3d at 1177 (emphases added). "When an employer selects among several possible reasonable accommodations, the preferred option is *always* an accommodation that keeps the employee in his or her existing job if that can reasonably be accomplished." *Id.* at 1170 (emphasis added); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1301 (D.C. Cir. 1998) ("Congress saw reassignment, as the EEOC does, as an option to be considered only after other efforts at accommodation have

failed.");[5] *cf. Wirtes v. City of Newport News*, 996 F.3d 234, 242 (4th Cir. 2021) (holding that an employer generally refuses to accommodate a disabled employee "when it unilaterally reassigns them to a vacant position instead of reasonably accommodating them in their current position").

Here, although Kohl's points to a letter addressed to Mr. Griego in which it stated that Mr. Griego could be transferred to "any open non-LP position for which [he was] qualified," *see* [Doc. 11-3 at 4], this suggested accommodation was proposed in the event that Mr. Griego "did not wish to accept" the Proposed Accommodation, which he had already rejected. [*Id.*]; *see also* [Doc. 1 at 17, ¶ 69]. In other words, Mr. Griego was forced to choose between either the Proposed Accommodation, which he had already concluded was unacceptable and had informed Kohl's as such, or a transfer to a new position, with no further discussion from Kohl's or any attempt on the part of Kohl's to keep Mr. Griego in his then-current position, despite its obligation under Tenth Circuit law to attempt to do so. *Smith*, 180 F.3d at 1177; *Valdez v. McGill*, 462 F. App'x 814, 819 (10th Cir. 2012) (unpublished) ("An employer must make a reasonable effort to explore the accommodation possibilities with the employee."). The court finds these allegations sufficient to allege that Kohl's failed to make a reasonable effort to explore all reasonable accommodation options with Plaintiff and failed participate in the interactive process in good faith, and thus any breakdown of the process could be attributed to Kohl's. *See McFarland*, 2017 WL 3872639, at

---

[5] *See also* Equal Opportunity Employment Commission, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act*, No. 915.022, 2002 WL 31994335 at *20 (Oct. 17, 2002) ("Reassignment is the reasonable accommodation of last resort and is required only after it has been determined that: (1) there are no effective accommodations that will enable the employee to perform the essential functions of his/her current position, or (2) all other reasonable accommodations would impose an undue hardship [on the employer]."). Although this EEOC Guidance is not binding on the court, *Smith*, 180 F.3d at 1165 n.5, the Tenth Circuit has described the Guidance as "a body of experience and informed judgment to which courts and litigants may properly resort for guidance," *Exby-Stolley*, 979 F.3d at 803, and has relied on such Guidance in its rulings. *See, e.g.*, *id.* at 802-04.

*6 (noting that, in determining who caused the breakdown, courts may look for a "failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary").   Accordingly, the court is respectfully not persuaded by Defendant's first argument.

### B.    Reasonable Accommodation

Next, Kohl's argues that Plaintiff fails to state a failure-to-accommodate claim because "it provided [Plaintiff] with two reasonable accommodations," i.e., the Proposed Accommodation and the offer to move Plaintiff to a different open position for which he was qualified, both of which "allowed Radar to accompany and assist [Plaintiff] in performing the essential functions of his position, while ensuring the safety of [Defendant's] other employees and customers." [Doc. 11 at 11].   Kohl's asserts that Mr. Griego "cannot prove that he was not offered a reasonable accommodation[] when he himself alleges he was offered two accommodations."   [*Id.*].   In response, Mr. Griego argues that both of these suggested accommodations were unreasonable because the first Proposed Accommodation and its restrictions would have "interfered with his ability to perform his job." [Doc. 20 at 7].   Moreover, Mr. Griego asserts that reassignment to a new position "should be considered only when accommodation within the individual's current position would pose an undue hardship," and Kohl's failed to assert or explain any undue hardship in keeping Mr. Griego in his loss-prevention role.  [*Id.* at 9].

"[T]he term 'reasonable accommodation' refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job."  *Punt v. Kelly Servs.*, 862 F.3d 1040, 1051 (10th Cir. 2017 (emphasis omitted).    Reasonable accommodations are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable

an individual with a disability who is qualified to perform the essential functions of that position."
*E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 987 (10th Cir. 2012) (quoting 29 C.F.R.
§ 1630.2(o)(1)(ii)).[6]  The ADA does not require an employer to relieve an employee of an essential
job function, *id.* (citing *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004)),
nor is an employer required to "reallocate job duties in order to change the essential function of a
job." *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124-25 (10th Cir. 1995).  "The determination of
whether a requested accommodation is reasonable must be made on the facts of each case taking
into consideration the particular individual's disability and employment position." *Punt*, 862 F.3d
at 1050 (internal quotation omitted).

At the outset, the court again must acknowledge that "[a] district court's estimate of what
is reasonable rests in large part upon factual determinations," *Nathanson v. Med. College of Penn.*,
926 F.2d 1368, 1386 (3d Cir. 1991) (quotation omitted), and "[t]he fact-specific nature of a
reasonable accommodation analysis often renders such an analysis inappropriate at the motion to
dismiss stage." *Fedynich v. Inn Between of Longmont*, No. 17-cv-01952-WJM-STV, 2018 WL
4345190, at *5 (D. Colo. June 1, 2018), *report and recommendation adopted*, 2018 WL 3868705
(D. Colo. Aug. 15, 2018) (addressing whether an accommodation under the Fair Housing Act was
reasonable).  For this reason, courts regularly decline to rule whether an accommodation is or was
reasonable at the motion-to-dismiss stage.  *See Brinkman v. Hobble Creek Half Marathon*, No.

---

[6] Alternatively, a reasonable accommodation may be defined as "[m]odifications or adjustments
to a job application process that enable a qualified applicant with a disability to be considered for
the position such qualified applicant desires," or "[m]odifications or adjustments that enable a
covered entity's employee with a disability to enjoy equal benefits and privileges of employment
as are enjoyed by its other similarly situated employees without disabilities."  29 C.F.R.
§ 1630.2(o)(1)(i),(iii).  These definitions are not applicable to the instant matter.  *See* [Doc. 20 at
6 (Plaintiff arguing that the correct legal standard for this case is whether the employer provided
the employee with an accommodation which "enables the employee to perform the essential
functions of his job") (emphasis omitted)].

2:05-cv-00009-PGC, 2005 WL 8175139, at *4 (D. Utah Aug. 3, 2005) (the question of whether an accommodation was reasonable "poses a factual issue which is not appropriate for determination on a motion to dismiss"); *Lewis v. Livingston Cty. Ctr. for Nursing & Rehab.*, 30 F. Supp. 3d 196, 210-11 (W.D.N.Y. 2014) ("Whether a certain accommodation is reasonable is a fact-specific inquiry and must be made on a case-by-case basis.  Accordingly, such determinations are better reserved for summary judgment or trial rather than the pleading stage."); *see also Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994) (citing Circuit cases holding that whether an accommodation is reasonable is a question of fact for the jury). [7]

Here, the crux of the Parties' argument concerns whether the Proposed Accommodation or Defendant's suggestion to move Plaintiff to a different position were reasonable or unreasonable. *See* [Doc. 11 at 11-12; Doc. 20 at 6-7].   A resolution of this dispute necessarily involves determinations of factual issues concerning Plaintiff's disability and the essential functions of his loss-prevention position.  *Punt*, 862 F.3d at 1050.  For this reason, Defendant's argument that Mr. Griego "cannot prove that he was not offered a reasonable accommodation[] when he himself alleges he was offered two accommodations" is not properly raised at the pleading stage.  *See Jackson v. Bd. of Cty. Comm'rs of Cty. of Sherman Cty., Kan.*, No. 17-2511-DDC-GEB, 2018 WL 3122176, at *11 (D. Kan. June 26, 2018) (rejecting the defendant's argument that the plaintiff had

---

[7] The court notes that the Tenth Circuit has stated that "[w]hether an accommodation is reasonable under the ADA is a mixed question of law and fact."  *See Mason*, 357 F.3d at 1122.  Indeed, the Tenth Circuit has held that certain accommodations are reasonable or unreasonable as a matter of law.  *See, e.g.*, *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017) (accommodation of overlooking an employee's past workplace-rule violations was not reasonable as a matter of law).  However, the Tenth Circuit has also instructed that, in some circumstances, "underlying fact issues [may] make it impossible to resolve as a matter of law whether" a proposed accommodation is reasonable.  *Brooks v. Colo. Dep't of Corr.*, --- F.4th ----, 2021 WL 4073631, at *7 n.8 (10th Cir. Sept. 8, 2021); *see also Punt*, 862 F.3d at 1050 ("The determination of whether a requested accommodation is reasonable must be made on the facts of each case taking into consideration the particular individual's disability and employment position." (quotation omitted)).

failed to state a failure-to-accommodate claim on the basis that "the Complaint concede[d] that [the defendant] provided a reasonable accommodation to plaintiff" where the court could infer from the allegations in the complaint that the defendant did not adequately accommodate the plaintiff). The court thus limits its inquiry to the factual allegations in Plaintiff's Complaint and turns to whether Plaintiff has sufficiently alleged that Kohl's failed to provide him with a reasonable accommodation.[8]

In reviewing the sufficiency of Plaintiff's Complaint, the court notes that Kohl's does not argue that Mr. Griego's requested accommodation was unreasonable or that it would have caused Kohl's an undue burden. *See* [Doc. 11]. Therefore, the issue before this court "is not whether Plaintiff's requested accommodation was reasonable, but whether [Defendant's] proposed alternatives fit that description." *Goonan v. Fed. Rsrv. Bank of New York*, 916 F. Supp. 2d 470,

---

[8] The court notes that Defendant's Motion repeatedly raises arguments not appropriately asserted in a motion to dismiss. *See, e.g.*, [Doc. 11 at 11-12 (arguing that "both accommodations allowed Radar to accompany and assist [Plaintiff] in performing the essential functions of his position" and that Plaintiff "cannot prove that he was not offered a reasonable accommodation[] when he himself alleges he was offered two accommodations."). Similarly, in its Reply, Kohl's argues that the Proposed Accommodation was reasonable because it tracked Mr. Griego's own statements about his requested accommodation. *See* [Doc. 23 at 2-4]. These arguments do not attack the sufficiency of the Complaint, but rather assert arguments as to the proper interpretation of the underlying facts, which is not appropriate for a motion to dismiss. *See Jackson*, 2018 WL 3122176, at *1 ("[Defendants] ask the court to consider and weigh plaintiff's factual allegations—something the court cannot do at the motion to dismiss stage. . . . Defendants' [arguments are] not consistent with the purpose of Rule 1, which directs federal courts to construe the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding.") (quoting Fed. R. Civ. P. 1)). Defendant does not seek to convert this motion to one for summary judgment, and this court does not recommend such a conversion. *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). However, the court finds that the Motion to Dismiss could be construed as asserting a general argument that Plaintiff has failed to state a claim—i.e., asserting arguments challenging the sufficiency of the pleading. *See* [Doc. 11 at 8 (arguing that Plaintiff "has not pleaded facts plausibly suggesting his entitlement to relief"). Because this court proceeds by Recommendation, the court construes the Motion to Dismiss as challenging the sufficiency of Plaintiff's factual averments and will thus consider whether Plaintiff has adequately alleged facts that he was denied a reasonable accommodation.

482 (S.D.N.Y. 2013) (citing 42 U.S.C. § 12112(b)(5)(A)); *see also Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1093 n.1 (E.D. Cal. 2017) ("[I]f neither alternative offered by defendant is 'reasonable,' defendant's denial of plaintiff's [accommodation] request would constitute an 'adverse employment action.'").[9]   Indeed, although Mr. Griego asserts that his requested accommodation was reasonable, *see, e.g.*, [Doc. 1 at 21, ¶ 97], the question before the court is whether he has sufficiently alleged that Defendant's Proposed Accommodation was *not* reasonable. *See Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) ("[A]n employer is not required to always provide the employee with the best possible accommodations or in the specific manner the employee requested," but must nevertheless provide a reasonable accommodation); *see also* [Doc. 20 at 6-7 (Plaintiff stating that "[t]he issue to be adjudicated in this case . . . is whether [Defendant's] proposal, i.e., its restrictions which subtracted from Mr. Griego's request—would also have satisfied the legal criteria for reasonable accommodation.")]. Thus, the court focuses its analysis on whether Plaintiff has alleged that the Proposed Accommodation was unreasonable—i.e., that the Proposed Accommodation failed to enable him "to perform the essential functions of [his] position." 29 C.F.R. § 1630.2(o)(1)(ii); *Punt*, 862 F.3d at 1051.

The Complaint sets forth generally how Radar assists Mr. Griego, *see* [Doc. 1 at 4-5, ¶¶ 9-12], and also sets forth, generally, Mr. Griego's job duties as a loss-prevention employee, which included monitoring surveillance footage, apprehending and interviewing suspected shoplifters, "walk[ing] the sales floor and inspect the fitting rooms and the rear area of the store, twice per

---

[9] *Cf. Durick v. N.Y.C. Dep't of Educ.*, 202 F. Supp. 3d 277, 292 (E.D.N.Y. 2016) (in summary judgment case, stating that "[i]n cases where a plaintiff claims []he was offered or given an unreasonable alternative accommodation, the court looks to the alternative accommodation to determine whether it was plainly reasonable.").

shift," and being "present on the sales floor during weekly audits of store merchandise" [*id.* at 6, ¶¶ 22, 25]. However, there are no allegations in the Complaint alleging which of Mr. Griego's job duties constitute the specific essential functions of his position, nor are there factual allegations that the Proposed Accommodation did or would have prevented Mr. Griego from performing those essential functions, so as to render the Proposed Accommodation unreasonable. *See generally* [*id.*]. Indeed, Mr. Griego alleges only that he objected to the Proposed Accommodation on the grounds that the Proposed Accommodation was inconsistent with Radar's training, [*id.* at 14, 16, ¶¶ 61, 67], that it would "interfere with his relationship with Radar and prohibit Radar from providing assistance to [Mr. Griego]," [*id.* at 14, 16 ¶¶ 62, 67], and because Radar had never been crated. [*Id.* at 16, ¶ 67]. But allegations that the Proposed Accommodation would create non-work-related difficulties or was otherwise inconvenient are insufficient to allege that the Proposed Accommodation was, as a matter of law, unreasonable. *Cf. Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94, 97 (2d Cir. 2015) (affirming summary judgment in favor of employer where the employee had alleged that the provided accommodation of an ASL interpreter required him "to look back and forth between the interpreter and his screen," but had not alleged that the accommodation prevented the employee from performing the essential functions of his job).

At best, Mr. Griego's assertion that the Proposed Accommodation "would . . . prohibit Radar from providing assistance to" Mr. Griego might demonstrate that the Proposed Accommodation would have left Mr. Griego without the assistance of Radar for some portion of his workday. [Doc. 1 at 14, ¶ 62]. In addition, Mr. Griego alleges that "[i]t was also very stressful for Mr. Griego to perform his job duties without Radar's assistance." [*Id.* at 7, ¶ 34]. Although Mr. Griego alleges that Radar "is trained to accompany [Mr. Griego] closely throughout the day" and that Mr. Griego requires Radar to "help him in [his] daily life," [*id.* at 4, ¶ 9], Mr. Griego does

not allege facts in the Complaint that would allow the factfinder to conclude that he needed Radar's accompaniment at all times of the day to sufficiently perform his job duties or that he otherwise could not perform the essential functions of his job without Radar by his side at all times. *See generally* [*id.*]. Indeed, Mr. Griego alleges he did so when he was first hired while Kohl's was originally considering his request to bring Radar to work with him as a reasonable accommodation for his disability. [*Id.* at 7, ¶ 34]. The court cannot conclude—even construing the allegations in the light most favorable to Plaintiff—that these allegations sufficiently assert that the Proposed Accommodation prevented Mr. Griego from performing the essential functions of his job so as to render the Proposed Accommodation unreasonable.[10]  29 C.F.R. § 1630.2(o)(1)(ii); *compare Bonnen v. Coney Island Hosp.*, No. 16-cv-04258-AMD-CLP, 2017 WL 4325703, at *10 (E.D.N.Y. Sept. 6, 2017), *report and recommendation adopted*, 2017 WL 4296733 (E.D.N.Y. Sept. 26, 2017) (finding that the pro se plaintiff had sufficiently alleged that the defendant's proposed accommodations to address her allergies to her lab coat were not reasonable when the plaintiff alleged that she was still allergic to the defendant's proposed alternatives).

In his Response to the Motion to Dismiss, Mr. Griego attempts to raise such an argument, asserting that the Proposed Accommodation "actually interfered with his ability to perform his job by enforcing an unreasonable separation" of Plaintiff and Radar and that "any proposed restriction by Kohl's that caused Mr. Griego to be separated from his service dog was facially and objectively unreasonable." [Doc. 20 at 6-7 (emphasis omitted)]. In support, Plaintiff states that he "requires the full-time assistance of [Radar] to conduct himself during the day, including during the performance of his job duties." [*Id.* at 2]. But the court cannot rely on new arguments or facts

---

[10] Nor has Mr. Griego cited any case law authority demonstrating that an accommodation may be deemed unreasonable if it interferes with an employee's relationship with his or her service dog or is otherwise inconsistent with the service dog's training. *See* [Doc. 20].

raised in a response in ruling on a motion to dismiss.  *See Warad W., LLC v. Sorin CRM USA Inc.*, 119 F. Supp. 3d 1294, 1305 (D. Colo. 2015) ("[W]hen deciding a Rule 12(b)(6) motion, this Court may not consider new allegations contained in a plaintiff's response."); *see also In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss.").[11]  The court only considers the sufficiency of the Complaint, which presently does not allege facts demonstrating that the Proposed Accommodation was unreasonable.[12]

---

[11] Insofar as Plaintiff attempts to assert an argument under Title II of the ADA in his Response, *see* [Doc. 20 at 2 ("Title II . . . requires Kohl's to permit any member of the public . . . to be accompanied by a service animal if that person requires such assistance due to disability.  Thus, Kohl's refused to permit its employee, Mr. Griego, to have his service dog in areas of his workplace where a customer with a service dog would otherwise be permitted.")], the court is respectfully not persuaded that this argument changes the analysis here.  First, Mr. Griego's disability-discrimination claim is based on a failure to accommodate, not the failure to provide a public benefit.  *See* [Doc. 1 at 20-21].  Mr. Griego cannot amend his Complaint through his Response.  *Qwest*, 396 F. Supp. 2d at 1203.  Second, Title II of the ADA provides that no person with a disability "shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*."  42 U.S.C. § 12132 (emphasis added).  A public entity is defined generally as a state or local government or any of a government's agencies or departments.  42 U.S.C. § 12131(1).  The Complaint contains no allegations that Kohl's is a public entity.  *See generally* [Doc. 1].  Finally, insofar as Mr. Griego attempts to argue that, because customers are permitted to bring service dogs into Kohl's stores, and because Kohl's refused to permit Mr. Griego to bring Radar onto the salesfloor, he has sufficiently alleged that the Proposed Accommodation was unreasonable, this is not the standard for demonstrating that an accommodation is unreasonable; rather, Mr. Griego must allege that the Proposed Accommodation prevented him from performing the essential functions of his job.  29 C.F.R. § 1630.2(o)(1)(ii).

[12] Although the court must construe facts in Plaintiff's favor, Plaintiff, who is represented, cannot state a failure-to-accommodate claim based simply on the bare assertion that the Proposed Accommodation was "unreasonable."  *See, e.g.*, [Doc. 1 at 21, ¶ 97].  *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.") (quotation omitted; alteration marks in original)); *McGettigan v. Di Mare*, 173 F. Supp. 3d 1114, 1121 (D. Colo. 2016) ("[A] court need not accept conclusory allegations."); *but see Forkin v. Loc. 804 Union (IBT)*, 394 F. Supp. 3d 287, 306 (E.D.N.Y. 2019) (finding that **pro se** plaintiff sufficiently stated a failure-to-accommodate claim "based on his allegations that [his employer] denied his request for a reasonable accommodation").

The court is cognizant of the fact that the reasonableness of a proposed accommodation is a fact-specific inquiry inappropriate for determination on a motion to dismiss, and the court expressly declines to pass on whether the Proposed Accommodation was a reasonable accommodation for ADA purposes.  The court nevertheless finds it appropriate to recommend that Mr. Griego's complaint be dismissed due to failure to state a claim.  Nevertheless, because this court believes that Plaintiff could correct the factual deficiencies identified within this Recommendation, the court recommends that the Complaint be dismissed without prejudice, with leave to amend.  *Schmidt v. Wells Fargo & Co.*, No. 17-cv-01555-RBJ, 2018 WL 1522609, at *8 (D. Colo. Mar. 28, 2018) ("Because the Court cannot rule out the possibility that plaintiff could, in good faith, allege facts that would plausibly support one or more of his claims, this dismissal will be without prejudice and with leave to amend."); *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) ("If it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.") (quotation and alteration marks omitted).[13]

## II.   Constructive Discharge

Finally, Defendant argues that "[t]he court should also dismiss [Plaintiff's] claim that he was constructively discharged," arguing that Plaintiff has failed to state a constructive-discharge claim.  [Doc. 11 at 12-13].  But in response, Mr. Griego asserts that the issue of whether he was constructively discharged "is an issue regarding the scope and extent of Mr. Griego's alleged damages should he prevail," rather than "an element of his *prima facie* case of disability discrimination. . . . It is enough that the Complaint adequately pleads that Kohl's refused to

---

[13] The court is cognizant of the fact that Plaintiff has not sought leave to amend in this case. However, because the deficiencies appear to be simple pleading deficiencies rather than deficiencies in Plaintiff's claims, the court recommends that Plaintiff be granted leave to amend.

reasonably accommodate Mr. Griego." [Doc. 20 at 10]. In its Reply, Kohl's concedes that Mr. Griego "does not have to prove he was constructively discharged to establish a *prima facie* case of disability discrimination under the ADA," but asserts that Mr. Griego "appears to be pursuing a disparate impact claim" with his allegations of constructive discharge. [Doc. 23 at 6].[14]

The court construes Mr. Griego's Response as disclaiming any disparate-impact claim based on an alleged constructive discharge of his employment. And the Tenth Circuit has held, *en banc*, that an adverse employment action, like discharge, is not a requisite element of an ADA failure-to-accommodate claim. *Exby-Stolley*, 979 F.3d at 792, *cert. denied sub nom. Bd. of Cty. Comm'rs v. Exby-Stolley*, No. 20-1357, 2021 WL 2637869 (U.S. June 28, 2021). For this reason, the court declines to address any argument asserted by Kohl's that dismissal of Plaintiff's failure-to-accommodate claim is appropriate due to any defect in how he pleads or asserts the allegation that he was constructively discharged. *See Pegues v. CareCentrix, Inc.*, No. 12-cv-02484-CM, 2013 WL 183996, at *1 (D. Kan. Jan. 17, 2013) ("The court accepts plaintiff's representation about her complaint and, because the court cannot dismiss claims that are not being asserted, denies defendant's motion on these issues."); *Baker v. Wells Fargo Bank, N.A.*, No. 19-cv-03416-RBJ-

---

[14] Kohl's argues that "[r]egardless of whether [Plaintiff] is pleading constructive discharge . . . as the means to assert back pay damages with respect to a failure to accommodate claim, [Plaintiff] must still plead facts sufficient to establish an actual constructive discharge in order to survive dismissal as to a constructive discharge." [Doc. 23 at 7]. Not only does Kohl's raise this argument for the first time in its Reply, thereby waiving such argument, *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019), but Kohl's has cited no legal authority supporting this proposition, nor has it cited any authority standing for the proposition that, in order to seek damages resulting from an alleged constructive discharge, a plaintiff must plead facts sufficient to state a separate constructive discharge claim. The court declines to recommend piecemeal dismissal of portions of Plaintiff's claim insofar as it relies on certain allegations, particularly where this court otherwise recommends dismissal without prejudice with leave to amend. "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Fed. Trade Comm'n v. Nudge, LLC*, 430 F. Supp. 3d 1230, 1246 (D. Utah 2019) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)).

NYW, 2020 WL 5079060, at *3 (D. Colo. Aug. 3, 2020), *report and recommendation adopted*, 2020 WL 5076802 (D. Colo. Aug. 26, 2020) (accepting the plaintiff's representations made in his response that he was not asserting a § 1983 claim).  Because Mr. Griego is not asserting a claim where an adverse employment action, such as constructive discharge, is an element of a prima facie case, this court declines to substantively consider Kohl's arguments regarding Plaintiff's assertion that he was constructively discharged.

For these reasons, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED**[15] and that Plaintiff's Complaint be **DISMISSED without prejudice**, with leave to amend.

---

[15] Given this Recommendation, the court declines to address Defendant's perfunctory alternative argument that the Complaint should also be dismissed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  *See* [Doc. 11 at 6 n.2].

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1)     Defendant's Motion to Dismiss Under Rule 12(b)(6) [Doc. 10] be **GRANTED**; and

(2)     Plaintiff's Complaint be **DISMISSED without prejudice**, but that Plaintiff be

        **GRANTED** leave to amend his Complaint within two weeks of any Order.[16]

DATED:  September 27, 2021                    BY THE COURT:

                                              Nina Y. Wang
                                              United States Magistrate Judge

---

[16] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).